Alexandria
LARRY D. JACKSON, COMMISSIONER,
VIRGINIA DEPARTMENT OF SOCIAL SERVICES
v.
JERRY MARSHALL
No. 2392-93-4
Decided February 14, 1995

Counsel

Gaye Lynn Taxey, Assistant Attorney General (James S. Gilmore, III, Attorney General; William H. Hurd, Deputy Attorney General; Jane D. Hickey, Senior Assistant Attorney General, on briefs), for appellant.

John A. Keats, for appellee.

Opinion

FITZPATRICK, J.—Larry D. Jackson, Commissioner (appellant), appeals a decision of the Fairfax County Circuit Court that ordered the Department of Social Services (DSS) to enter a finding of "Unfounded" in a sexual abuse complaint against Jerry Marshall (appellee). Appellant argues that the trial court erred in: (1) finding that former Code § 63.1-248.6(D)(7)[1] required a final disposition of only "Founded" or "Unfounded" and did not provide for a final finding of "Reason to Suspect," and (2) failing to dismiss the appeal as moot. Finding no error, we affirm the trial court.

The Child Protective Services unit of the Fairfax County Department of Human Development (the department) received a complaint on March 18, 1992 that appellee, an employee of Franconia ADS Youth Services, had abused a student enrolled there. After an initial investigation, the department determined that the allegation of child abuse was "Founded-Sexual Abuse." On July 13, 1992, after an informal conference pursuant to Code § 63.1-248.6:1(A), the department refused to amend the disposition. Appellee appealed that decision to DSS. On April 12, 1993, a DSS hearing commissioner found insufficient evidence to support a "Founded" determination and amended the disposition of the case to "Reason to Suspect-Sexual Abuse."

Pursuant to Code §§ 63.1-248.6:1 and 9-6.14:16, appellee filed for review with the circuit court, asserted that Code § 63.1-248.6(D)(7) allowed only a final disposition of either "Founded" or "Unfounded," and requested that a disposition of "Unfounded" be entered. DSS moved to dismiss the appeal as moot because the department and DSS had already destroyed all case records pursuant to DSS regulations.[2] On October 15, 1993, the circuit court

---

[1] Code § 63.1-248.6 was amended in 1993, and subsection (D) was redesignated as subsection (E).

[2] Va. Regs. Reg. 615-45-2, § 1.1 defines "Final Disposition" as the "determination of founded, reason to suspect, or unfounded made on each complaint by the investigating worker." This regulation also provides definitions of "Founded" and "Reason to Suspect":

"Founded" means that a review of the facts shows clear and convincing evidence that child abuse or neglect has occurred.

"Reason to suspect" means that a review of the facts shows no clear and convincing evidence that abuse or neglect has occurred. However, the situation gives the worker reason to believe that abuse or neglect has occurred.

denied DSS's motion to dismiss and found that "Code [§ 63.1-248.6(D)(7)] does not authorize a finding of 'Reason to Suspect' and that the Virginia Department of Social Services is required to enter a finding of either 'Founded' or 'Unfounded'." The court ordered DSS to enter a finding of "Unfounded" because all parties stipulated that insufficient evidence existed to support a final disposition of "Founded."

## REASON TO SUSPECT DESIGNATION

█ Code § 63.1-248.1 sets forth the purpose of the Child Abuse and Neglect Act (the Act):

The General Assembly declares that it is the policy of this Commonwealth to require reports of suspected child abuse and neglect for the purpose of identifying children who are being abused or neglected, of assuring that protective services will be made available to an abused or neglected child in order to protect such a child and his siblings and to prevent further abuse or neglect, and of preserving the family life of the parents and children, where possible, by enhancing parental capacity for adequate child care.

*Jackson v. W.*, 14 Va. App. 391, 400, 419 S.E.2d 385, 390 (1992) (quoting Code § 63.1-248.1). The Act mandates the establishment of child protective services units in each local department and gives the local departments investigative duties in child abuse and neglect cases. Code § 63.1-248.6(D).

The local department shall upon receipt of a report or complaint:

1. Make immediate investigation;

2. When investigation of a complaint reveals *cause to suspect* abuse or neglect, complete a report and transmit it forthwith to the central registry;

Va. Regs. Reg. 615-45-1, § 2.2 states: "Identifying information in reports of child abuse and neglect shall be maintained in the central registry . . . [o]ne˙year past the date of the complaint for all complaints determined by the investigating agency to be reason to suspect."

3. When abuse or neglect is found, arrange for necessary protective and rehabilitative services to be provided to the child and his family;

4. If removal of the child or his siblings from their home is deemed necessary, petition the court for such removal;

5. Report immediately to the attorney for the Commonwealth and make available to him the records of the local department upon which such report is based, when abuse or neglect is suspected in any case involving . . . (iii) any sexual abuse, suspected sexual abuse or other sexual offense involving a child . . . and provide the attorneys for the Commonwealth with records of any prior founded disposition of complaints of abuse or neglect involving the victim. . . .

6. Send a follow-up report based on the investigation to the central registry within fourteen days and at subsequent intervals to be determined by department regulations;

7. Determine within forty-five days if a report of abuse or neglect is *founded or unfounded* and transmit a report to such effect to the central registry; [and]

8. If a report of abuse or neglect is unfounded, transmit a report to such effect to the complainant and parent or guardian and the person responsible for the care of the child in those cases where such person was suspected of abuse or neglect . . . .

*Id.* (emphasis added).

Code § 63.1-248.6:1 provides procedures for appealing a report rendered by the local department:

A person who is the subject of a report pursuant to this chapter and who is suspected of or found to have committed the abuse or neglect complained of may, within thirty days of being so notified, request the local department rendering such report to amend such report and the local department's related records. The local department shall hold an informal conference or consultation . . . . If the local department refuses the request for amendment or fails to act within thirty

days after receiving such request, the person may, within thirty days thereafter, petition the Commissioner, who shall grant a hearing . . . .

If aggrieved by the decision of the hearing officer, such person may obtain further review of the decision in accordance with . . . the Administrative Process Act.

DSS's regulations implementing the Act's provisions provide for three possible dispositions in child protective services cases: founded, unfounded, and reason to suspect. Va. Regs. Reg. 615-45-1, § 1-1 and Reg. 615-45-2, § 1-1. DSS, pursuant to the Commissioner's authority under Code § 63.1-4,[3] established guidelines for maintaining reports of abuse and neglect:

The local department shall retain the records of any investigation of a report/complaint . . . which it determines to be:

a) Unfounded — 30 days from the date the person who is the subject of the report or complaint is notified of such determination. The record shall be purged at the end of the 30 day period unless the abuser/neglector requests in writing that the record be retained. *The department shall retain the records for an additional period of up to two years if requested* in writing by the person who is the subject of such complaint or report. . . .

b) Reason to suspect — one year past the date of the complaint unless there are previous or subsequent substantiated complaints.

Virginia Department of Social Services, Protective Services, Vol. VII, Section III, Chapter A at 28 (July 1992) (emphasis added). *See Jackson*, 14 Va. App. at 399, 419 S.E.2d at 389 (holding that the "Commissioner's adoption of guidelines interpreting the statute was within his statutory authority" under Code § 63.1-4).

"On review, 'the interpretation which an administrative agency gives its [law] must be accorded great deference.' " *Jack-*

---

[3] Code § 63.1-4 provides, in pertinent part, that "[the Commissioner] shall supervise the administration of the provisions of this title and shall see that all laws pertaining to the Department are carried out to their true intent and spirit."

*son*, 14 Va. App. at 400-01, 419 S.E.2d at 390 (quoting *Virginia Real Estate Bd. v. Clay*, 9 Va. App. 152, 159, 384 S.E.2d 622, 626 (1989), *appeal dismissed*, 398 S.E.2d 78 (1990)). However, "[c]ourts must 'construe and determine compliance with the statutes governing adoption of administrative regulation irrespective of the agency's construction,' and not 'merely rubber-stamp an agency determination.' Agency action, even when 'supported by substantial evidence,' must be set aside if judicial review reveals a failure '. . . to comply with statutory authority.' " *Environmental Defense Fund, Inc. v. Virginia State Water Control Bd.*, 15 Va. App. 271, 278, 422 S.E.2d 608, 612 (1992) (citations omitted). "A primary rule of statutory construction is that courts must look first to the language of the statute. If a statute is clear and unambiguous, a court will give the statute its plain meaning." *Loudoun County Dep't of Social Services v. Etzold*, 245 Va. 80, 85, 425 S.E.2d 800, 802 (1993).

█ Code § 63.1-248.6(D) clearly authorizes DSS to enter only one of two final disposition alternatives, "Founded" or "Unfounded," in a child protective services case. DSS's regulations and guidelines expanding this statutory grant are inconsistent with the plain meaning of the statutory framework for the investigation and appeals process.

█ The statute sets up a step-by-step process for the investigation of cases of abuse and neglect. DSS's primary function is to immediately investigate complaints of child abuse and to take prompt action when necessary to protect the child. Code § 63.1-248.6(D)(1), (3)-(5). If the department makes an *initial* determination that abuse is suspected or has occurred, the department is required to file a report to this effect with the central registry. Code § 63.1-248.6(D)(2). Within fourteen days, the department must send a second, follow-up report to the central registry. Code § 63.1-248.6(D)(6). Then, within forty-five days, the department is required to enter a final disposition of "Founded" or "Unfounded" and send a third report to the central registry. Code § 63.1-248.6(D)(7). The plain meaning of the language in Code § 63.1-248.6(D) indicates that these are ascending steps in the investigative process and that the statute requires a final disposition of "Founded" or "Unfounded."

█ This process is analogous to a criminal proceeding, in which only probable cause need be established at the preliminary hear-

ing but the standard at trial is proof beyond a reasonable doubt. In child abuse cases, it is often necessary to take quick action to protect the child, and the initial determination of "cause to suspect" allows DSS to take such action. Before a final disposition of "Founded" may be entered, however, the evidence must be clear and convincing in order to protect not only the interests of the child but also the rights of the person accused.

We hold that the circuit court did not err in construing Code § 63.1-248.6(D)(7) to require a final disposition of "Founded" or "Unfounded."

## MOOTNESS

Appellant next argues that even if appellee's statutory interpretation is correct, the case was rendered moot when the records were destroyed prior to the final hearing date. When DSS amended the disposition of appellee's case from "Founded" to "Reason to Suspect," DSS and the department destroyed internal records and reports in the central registry pursuant to their guidelines and procedures. *See supra* note 2. Appellant contends that, because this information has been deleted, there are no records to be changed to reflect the correct finding of "Unfounded."

■ " 'The duty of this court as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions.' " *Potts v. Mathieson Alkali Works*, 165 Va. 196, 225, 181 S.E. 521, 533 (1935). Dismissal is the proper remedy if "an event occurs which renders it impossible for [a] court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever." *Hankins v. Town of Virginia Beach*, 182 Va. 642, 644, 29 S.E.2d 831, 832 (1944). We disagree with appellant's argument that the destruction of the case records was an event rendering the case moot.

" '[I]n today's society there is no more deplorable badge of infamy a person can wear than that of being a child abuser.' " *Jackson*, 14 Va. App. at 408, 419 S.E.2d at 395. From the time the department entered its initial disposition of "Founded-Sexual Abuse," which was later amended to "Reason to Suspect," until the deletion of the case records one year after the initial complaint, the central registry contained reports designating appellee

as either a person found to have committed abuse or a person suspected of abuse. This information was available to the Commonwealth's Attorney pursuant to Code § 63.1-248.6(D)(5) and to appellee's employer.

Additionally, DSS's own guidelines recognize the possibility of harm to a person wrongly accused of child abuse because in "Unfounded" cases, DSS *must* retain the report of the disposition in the central registry for up to two years if the individual involved so requests. The obvious purpose is to allow an accused abuser to prove to others that the charge was without merit. Although DSS's guidelines provide for retention of "Unfounded" dispositions for up to two years, in this case, appellee never had the benefit of having an "Unfounded" disposition entered in the central registry. Thus, the destruction of the case records did not render the case moot because an "Unfounded" disposition entered in the central registry would have provided appellee with "effectual relief."

For the reasons stated, we affirm the judgment of the trial court.

*Affirmed.*

Barrow, J., and Koontz, J., concurred.