COURT OF APPEALS OF VIRGINIA


Present: Judges Frank, McClanahan and Retired Judge Hodges[*]


SCOTT M. SCARBOROUGH

                                     MEMORANDUM OPINION[**]

v.       Record No. 2248-07-3                    PER CURIAM
                                               OCTOBER 14, 2008

VIRGINIA EMPLOYMENT COMMISSION AND
  SCHRADER-BRIDGEPORT INTERNATIONAL, INC.


FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
J. Samuel Johnston, Jr., Judge

(Scott M. Scarborough, *pro se*, on briefs).

(Robert McDonnell, Attorney General; Elizabeth B. Peay, Assistant
Attorney General; Thomas W. Nesbitt, Assistant Attorney General,
on brief), for appellee Virginia Employment Commission.

No brief for appellee Schrader-Bridgeport International, Inc.


     Scott M. Scarborough (Scarborough) appeals from a decision of the circuit court affirming

the finding of the Virginia Employment Commission (VEC) that Scarborough is disqualified from

receiving unemployment compensation benefits because Schrader-Bridgeport International, Inc.

(SBI) discharged him for misconduct connected with work. Scarborough contends (1) SBI failed to

prove he was discharged for misconduct connected with work, because the email he sent to SBI's

employees and others, using his SBI computer and email account, involved "non-partisan" political

activity, rather than "partisan" political activity; (2) the circuit court erred in not requiring the VEC

to make a finding as to whether the Altavista mayor's race, which was the subject of his email, was

---

     [*] Retired Judge Hodges took part in the consideration of this case by designation pursuant
to Code § 17.1-400(D).

     [**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"partisan" or "non-partisan"; (3) he proved circumstances in mitigation of his conduct so as to avoid disqualification from receiving benefits; (4) the circuit court erred by not finding the VEC guilty of "extreme bias and fraud"; and (5) SBI's intent with respect to the use of the term "partisan" in its handbook policy was "not to allow it to run afoul of federal law . . . ." Upon reviewing the record and the briefs filed by Scarborough and the VEC, we conclude that this appeal is without merit. Accordingly, we summarily affirm the circuit court's decision. See Rule 5A:27.[1]

### STANDARD OF REVIEW

> "[I]n any judicial proceedings 'the findings of the commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.'" In accord with our usual standard of review, we "consider the evidence in the light most favorable to the finding by the Commission."

Wells Fargo Alarm Svcs., Inc. v. Virginia Employment Comm'n, 24 Va. App. 377, 383, 482 S.E.2d 841, 844 (1997) (citations omitted). "'Whether an employee's behavior constitutes misconduct, however, is a mixed question of law and fact reviewable by this court on appeal.'"

---

[1] By order dated March 27, 2008, we dismissed this appeal because Scarborough failed to bring his opening brief into compliance with Rule 5A:20. Subsequently, Scarborough filed a petition for rehearing, along with seven copies of a "revised Opening Brief, greatly reduced and condensed with references to the Statement of Facts." Scarborough requested that we "look at this new brief." Subsequent to the Supreme Court's decision in Jay v. Commonwealth, 275 Va. 510, 659 S.E.2d 311 (2008), and by order entered June 5, 2008, we granted Scarborough's petition for rehearing, vacated our March 27, 2008 dismissal order, and reinstated the case on the Court's docket. However, in summarily affirming the circuit court's decision, we have considered only those arguments raised in Scarborough's original opening brief filed in December 2007. We consider each of those arguments, numbered 1 through 5, separately in this opinion. We will assume those arguments relate to the four "Legal Questions Presented," as set forth in Exhibit 5 to the opening brief. We have not considered the "new" opening brief Scarborough filed with his petition for rehearing in April 2008. Scarborough did not seek leave of court to file that "new" opening brief in addition to or as a substitute for his original opening brief. We also note that the written statement of facts contained in the record, to which the VEC filed objections and requested be stricken from the record, is not signed by the parties or the circuit court judge. Accordingly, we have not considered it on appeal. See Rule 5A:8. Rather, we have considered the agency record of the proceedings and the circuit court record, which are properly before us.

Id. at 384, 482 S.E.2d at 844 (quoting Israel v. Virginia Employment Comm'n, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988)).

BACKGROUND

Scarborough worked for SBI from August 15, 1995 through August 26, 2004. At the time of his separation from employment, he worked as a lab test engineer, earning $68,000 annually. His duties, in part, required use of SBI's computer, including the Internet and email.

On August 26, 2004, in response to an event reported in the local newspaper, Scarborough sent out an email, using SBI's computer and his company email account, to everyone in the company and to a few persons outside of the company. The content of Scarborough's email read as follows:

> By Scott Scarborough
>
> I was quit [sic] impressed with the Altavista Journal last week. It's not very often that you can glean so much information about a town by reading a couple of articles in a town's newspaper. I am referring to the article about the Pub raid and the op-ed piece about the same, telling us the story about six blacks who were arrested at the Pub for being drunk. I gather from these articles that the odds of walking into the local Pub and finding 6 black drunks but zero white drunks are the exact same odds that the Altavista Police force (along with the State ABC police) are not composed of racists. For those of you who have never frequented the Pub, these odds are pretty grim – the Pub has more white patrons than black patrons. Now I'm sure that most whites in this fair town are quite content with the situation but for you black residents of Altavista there is something you can do. The responsibility of this racist police force falls squarely at the feet of the Mayor, Rudy Burges. Unlike the situation for the past 20 years, this November there is a choice; Rudy has a challenger, Gabriel Eades. Gabriel will not put up with this kind of racist behavior and will put an end to it! Get out the vote this November! Oh, and but he [sic] way, for those of you who think that the odds I referred to above are just a coincidence, say hello to the tooth fairy for me.

Upon learning of Scarborough's email, SBI discharged him for violating company policy. That policy, contained in SBI's associate handbook, states that "[a]ssociates who participate in

partisan political activities must ensure that they do not create the impression that they are speaking or acting on behalf of the Company." It further states that "[a]ll associates who use company facilities and/or equipment to send and receive email are representatives of the company. They are expected to conduct all business via e-mail in a professional business manner. Associates may access and use the internet only for business needs." A violation of those policies "may be subject to disciplinary action up to and including termination." On August 10, 2001, Scarborough signed an acknowledgment indicating his receipt of a copy of SBI's associate handbook, which contained these policies.

SBI had a business relationship with the office of the mayor, the city administrator, and the city council, and it applied for grants to assist in its business. SBI did not always enforce its Internet use policy among employees with respect to sending out personal emails. The evidence showed that at times employees sent and received personal emails, discussing non-work-related topics.

Scarborough filed a claim for unemployment benefits. A VEC deputy, after considering the facts obtained in connection with Scarborough's claim, held he was disqualified from receiving benefits on the ground that he was discharged for misconduct connected with his work in that he knowingly violated several company rules. SBI submitted a copy of its company policies to the VEC during the fact-finding process before the deputy. In her decision, the deputy cited SBI's policies stating that associates may only use SBI's computers for business needs and that associates who participate in political activities are to ensure that they do not give the impression that they are speaking on behalf of SBI.

Scarborough appealed that adverse ruling to an appeals examiner. Following a telephonic hearing on the matter, the appeals examiner reversed the determination of the deputy and found Scarborough qualified to receive benefits. SBI appealed that decision.

The VEC considered the record and reversed the appeals examiner's decision, disqualifying Scarborough from receiving benefits based upon its finding that Scarborough's email, which "criticized the mayor and police over a particular incident that occurred in the community and then urged voters to vote for another candidate for . . . mayor," constituted "a partisan political activity:  campaigning on behalf of a specific candidate."  The VEC further found that when Scarborough sent out that email on SBI's computer system, using his SBI email account, which mentions SBI's name, "he risked having his views perceived as being endorsed by the company," and he "knew or should have known that others could reasonably have assumed he was speaking on behalf of [SBI]."  The VEC found SBI had a legitimate business interest in preventing such activity based on its need to maintain a working relationship with community leaders and to apply for available grants and that Scarborough's conduct potentially threatened that interest.  The VEC rejected Scarborough's assertion that sending the email was a personal act that could not be construed as speaking on behalf of SBI.  The VEC found that the "politically charged" speech was sent from Scarborough's company email account to all company employees and some individuals outside the company and that "anyone reading the e-mail address in their inbox could reasonably believe that it was coming from a representative of [SBI]."

The VEC also found that Scarborough did not show circumstances in mitigation of his conduct.  The VEC rejected Scarborough's claim that he mitigated his conduct because he was not aware of SBI's rule against sending such emails, and because SBI tolerated personal emails, some of a political nature.  The VEC found that once Scarborough signed for receipt of the company handbook, he was charged with knowing the policies contained therein.  Furthermore, while Scarborough produced evidence that some employees sent personal emails, none of those emails were sent to all employees nor did they urge the reader to vote for a particular candidate.

Thus, the VEC concluded that "[t]he evidence is sufficient to show the employer failed to unilaterally enforce the policy requiring employees to use the internet for business purposes only, but not that it failed to enforce the policy prohibiting employees from engaging in partisan political activities that create the impression they are speaking on behalf of the company."

Scarborough appealed the VEC's decision to the circuit court, which reviewed the record and argument, and by order dated August 22, 2007, affirmed the VEC's decision denying Scarborough benefits. He appeals that decision to this Court.

## ANALYSIS

### Argument 1: Partisan vs. Non-Partisan

In his "Argument 1," Scarborough asserts that the Altavista mayor's race was "nonpartisan" and, therefore, he could not have violated SBI's rule related to "partisan" political activity. Thus, he contends SBI failed to prove he engaged in misconduct connected with work. Contrary to the VEC's assertion, we find that Scarborough raised this issue in his petition for judicial review filed in the circuit court and, therefore, preserved it for appellate review.

Code § 60-618(2) provides for disqualification from receipt of unemployment benefits if the VEC finds that the employer proved the employee was discharged for work misconduct.

> [A]n employee is guilty of "misconduct connected with his work"
> when he *deliberately* violates a company rule reasonably designed
> to protect the legitimate business interests of his employer, or
> when his acts or omissions are of such a nature or so recurrent as to
> manifest a *willful* disregard of those interests and the duties and
> obligations he owes his employer.

Branch v. Virginia Employment Comm'n, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978).

The VEC found that SBI's policy, for which Scarborough acknowledged his receipt, making him aware of that policy, stated that associates who participate in partisan political activities must ensure that they do not create the impression that they are speaking or acting on behalf of the company. The VEC made a specific finding that Scarborough's email, which

- 6 -

"criticized the mayor and police over a particular incident that occurred in the community and then urged voters to vote for another candidate for the race of mayor," "would constitute a partisan political activity:  campaigning on behalf of a specific candidate."

"Partisan" when used as a noun means "one who takes the side of or strongly supports a side, a party, or another person . . . ." Webster's New Universal Unabridged Dictionary 1307 (2d ed. 1983).  When used as an adjective, "partisan" means "of, like, or characteristic of a partisan, or adherent . . . ." Id.  The content of the email sent by Scarborough to SBI's employees and others using SBI's computer and email account was clearly political in nature and expressed Scarborough's support of one specific person, Gabriel Eades, over another person, Rudy Burges, in the mayor's race, and urged persons to vote.  Thus, we find no error in the VEC's legal conclusion that Scarborough's email constituted "partisan" political activity.  Accordingly, the circuit court did not err in affirming the VEC's finding that Scarborough deliberately violated a company rule reasonably designed to protect SBI's legitimate business interests.

Argument 2:  Determination Regarding Nature of Mayor's Election

Scarborough argues the circuit court erred in not making a necessary determination or requiring the VEC to answer the question of whether the mayor's election was partisan or non-partisan.  The record that is properly before us on appeal does not show that Scarborough made any objection on this specific ground or raised this specific argument before the circuit court.  While Scarborough's petition for judicial review filed in the circuit court shows he argued before that court that the VEC erred in determining that he participated in "partisan" political activity versus "non-partisan" political activity, he never alerted the circuit court to the contention he now raises on appeal that either the circuit court or the VEC failed to make a

necessary finding.  Accordingly, we will not consider Scarborough's "Argument 2" for the first

time on appeal.  See Rule 5A:18.

> Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions.  See e.g., Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail oneself of the exception, a *defendant must affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred." (emphasis added)).  We will not consider, *sua sponte*, a "miscarriage of justice" argument under Rule 5A:18.

Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).[2]

### Argument 3:  Mitigation

"Once the employer has borne the burden of showing misconduct connected with the

work, either by violation of a rule or by an act manifesting a willful disregard of the employer's

interest, the burden shifts to the employee to prove circumstances in mitigation of his or her

conduct."  Virginia Employment Comm'n v. Gantt, 7 Va. App. 631, 635, 376 S.E.2d 808, 811,

aff'd on reh'g en banc, 9 Va. App. 225, 385 S.E.2d 247 (1989).  Absent evidence to "explain or

justify" such misconduct and "show mitigating circumstances, the commission must find that

benefits are barred."  Id.

Scarborough argues on appeal that by retracting the email after it had been sent he proved

sufficient mitigating circumstances so as to avoid disqualification for benefits and that the VEC

ignored that evidence.  Scarborough did not raise this specific argument before the VEC or the

circuit court.  While he discussed the retraction of his email in his petition for judicial review, he

did so in the context of arguing that the retraction prevented the VEC from finding he "willfully"

violated SBI's rule for purposes of concluding that he engaged in misconduct connected with his

work so as to disqualify him from benefits.  He did not argue that the retraction of the email

---

[2] Furthermore, the record belies Scarborough's assertion.  The VEC specifically found his conduct constituted "partisan" political activity.

constituted sufficient mitigating circumstances.  Accordingly, we will not address this argument for the first time on appeal.  See Rule 5A:18.  Furthermore, Scarborough does not request that we apply the ends of justice exception to Rule 5A:18, and we decline to do so *sua sponte*.  Edwards, 41 Va. App. at 752, 589 S.E.2d at 448.

### Argument 4:  Bias and Fraud

Scarborough contends the circuit court erred in not finding the VEC guilty of "extreme bias and fraud."  He asserts the VEC "dreamed up charges denied by the company."  He apparently argues the VEC fraudulently relied upon SBI's policy limiting the use of its computers to business purposes only as the basis for its finding that SBI discharged Scarborough for misconduct connected with work, where SBI did not rely upon that policy in discharging him.

We find no support in the record for these allegations.  To the contrary, the record shows the VEC fully and fairly considered Scarborough's claim for unemployment compensation benefits and SBI's basis for discharging him.  From the outset, SBI notified Scarborough that it discharged him due to the political email he sent, which SBI asserted showed a blatant disregard for its policy that as an SBI employee, Scarborough was obligated not to create the impression he was speaking on behalf of SBI.  SBI submitted a copy of the applicable policy from its handbook related to partisan political activity to the VEC before the deputy's decision.  The decisions of the deputy, the appeals examiner, and the VEC cite language from that policy in their discussion of the basis for Scarborough's discharge.

### Argument 5:  SBI's Intent

Scarborough's final argument poses the question, "What did the Policy makers who put the 'partisan politics' stipulation in the company policy intend?"  That question and its accompanying argument do not raise any specific issue of legal error by the circuit court.  """The

duty of this court as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions . . . .'"'" Jackson v. Marshall, 19 Va. App. 628, 635, 454 S.E.2d 23, 27 (1995) (quoting Potts v. Mathieson Alkali Works, 165 Va. 196, 225, 181 S.E. 521, 533 (1935)). Therefore, we decline to consider this question and the related argument.

For these reasons, we affirm the circuit court's decision. We deny Scarborough's request for an award of the costs of this appeal and punitive damages.

Affirmed.